## UNCERTAINTY AS TO THE MEANING OF THE WORDS "COMPLETE AUTOMATIC SPRINKLING SYSTEM."

Circuit Court of Stark County.

THE W. H. HOOVER COMPANY v. THE NIAGARA FIRE
EXTINGUISHER COMPANY.

Decided, February 21, 1910.

*Contract—Ambiguity—Extrinsic Evidence.*

In a written contract to install "a complete automatic sprinkler system such as will be satisfactory to the stock insurance companies, and when completed will meet strictly with their approval," the work to be "completed in accordance with the requirements of the Ohio Inspection Bureau," there is an ambiguity which authorizes extrinsic evidence as to the meaning of the word "complete."

*McCarty & Pontius,* for plaintiff.
*Turner & Webber* and *Orlando Wilcox,* contra.

MARVIN, J. (of the Eighth Circuit); TAGGART, J., and DONAHUE, J., concur.

The relation of the parties here is the reverse of their relation in the court of common pleas. The terms plaintiff and defendant as used in this opinion, will refer to the parties as they stood in the court below. Each of the parties is a corporation.

On the 24th day of March, 1906, a contract in writing was entered into between the parties, whereby the plaintiff undertook to equip the manufacturing plant of the defendant with an approved wet pipe system of the Niagara sprinklers and fire extinguishing apparatus, for which the defendant agreed to pay the sum of $5,500. The contract provided among other things, that this sum of $5,500 should be "in full for work and materials, as specified herein, including surveys, preparation of plans, board and car fare for men, and the final payment shall be due and payable thirty days after the work is completed, in accordance with the requirements of Ohio Inspection Bureau, under whose rules and regulations the work is to be performed."

The specifications made a part of the contract, contained the following clauses, among other things:

"The foregoing proposition is based upon furnishing and erecting the necessary number of automatic sprinklers in your plant located at New Berlin, Ohio, together with all pipe, fittings, valves, gauges, clips, hangers and labor necessary to erect the same in strict accordance with the requirements of the Ohio Inspection Bureau.   *   *   *   It is understood under this agreement that you (meaning the defendant) are to do all excavating and backfilling of trenches, and any carpenter and masonry work, and furnish piers for tank. · Otherwise, we are to install a complete automatic sprinkling system, such as will be satisfactory to the stock insurance companies, and when completed will meet strictly with their approval."

The plaintiff put into the manufacturing plant of the defendant a system of Niagara sprinklers and fire extinguishing apparatus which was to the satisfaction of the stock insurance companies and to the inspection bureau, and claims to have fully performed the contract on its part to be performed.   The defendant by its answer, denies that the plaintiff has put in a *complete* automatic sprinkling system, and avers that the fact is that it is such system, when complete, and would have included all that which was put in, together with an electric alarm system, and that no such "electric system" was put in. Aside from this, there is no disagreement between the parties.

The contract entered into was upon a printed form prepared by the plaintiff, to which was annexed the specifications, from which quotations have been made.   This printed form consists of a proposition made by the plaintiff to the defendant, and accepted by it.   The specifications are typewritten.   It developed upon the trial that on the 17th of March, 1906, the plaintiff had made a similar proposition to the defendant at a different price, to-wit, $6,000, which was not accepted by the defendant.   The defendant placed upon the stand W. H. Hoover, who was its president and general manager, and who acted for it in the making of the contract sued upon.   He testified that he had a conversation with Mr. Frazer, manager of the plaintiff at the time the contract was entered into, and then he was asked this question:

"Q. In that conversation did you call his attention to the fact that there was no itemized statement in this proposition of March 24th similar to the one set out in the proposition of March 17th?"

This question was objected to; the objection sustained, and an exception taken by the defendant. And the defendant's counsel stated that he expected the answer to be that the witness called Mr. Frazer's attention to the fact that in the proposition of March 17th there was an itemized list of the various things that were to make up said system complete, and that in the proposition of March 24th, there was no such itemized list.

This question was then asked of the witness:

"Q. I will ask you if at that time, before the signing of the contract, you asked Mr. Frazer what this proposition, which was not itemized, and which is incorporated into the contract of March 24th, included?

"A. I did.

"Q. What did he say?"

This question was objected to; the objection sustained, and an exception taken by the defendant, and the defendant's counsel stated that he expected the witness to say, in answer to this question, that Mr. Frazer, who represented the plaintiff in the transaction, said that the proposition included in the contract of March 24th was the same, and included all the work and material the same as that set out in the proposition of March 17th; that it was their flat form of contract, and that it included everything that was itemized in the form marked "Defendant's Exhibit A" (this Defendant's Exhibit A being the proposition which the defendant claimed was made to it on the 17th day of March).

Counsel for the defendant then said, "in connection with the testimony of this witness, the defendant offers the proposition, or blank contract of March 17, 1906, heretofore marked as its "Exhibit A." Objection to this was sustained and an exception taken by the defendant.

If there was any error for which the defendant can properly complain in the trial of this case, it was the ruling of the court

upon the several questions, and offers made by the defendant, shown in the foregoing. On the part of the plaintiff in error it is urged that this should have been admitted because it would have explained what the plaintiff meant or represented to the defendant that it meant by the words used in the contract actually entered into when it said "otherwise we are to install complete automatic sprinkling system." The word "otherwise" as here used is so used because immediately preceding it the defendant was to do certain work. This is seen by the quotation heretofore made of the clause preceding the word "otherwise." So then, except as to the things which the defendant was to do and which precede in the specifications the word "otherwise," the plaintiff was to install "a complete automatic sprinkling system." It is said that what constitutes "a complete automatic sprinkling system" would not be understandable necessarily by an intelligent man, without some explanation, and that such explanation was furnished by the plaintiff, as would appear if the witness had been permitted to answer that when he asked Frazer what was included in it, he answered, that it included all that was included in the proposition of March 17, and if the court had then permitted the proposition of March 17 in evidence, the words "complete automatic sprinkling system" would, it is claimed, have been fully explained. The specifications attached to the proposition of March 17th contain these words:

"The foregoing proposition is based upon furnishing and erecting 725 automatic sprinklers in your plant located at New Berlin, Ohio, together with all pipe, fitting, valves, guages, clips hangers and labor necessary to erect the same in strict accordance with the requirements of the Ohio Inspection Bureau. We further estimate that it will require." (Then follow twelve items of equipment, one of which is an "electric alarm system.")

But for certain words contained in the contract actually made, and also contained in the proposition of March 17th it would seem as though there could be little doubt that the defendant was entitled to show what he offered to show, that the plaintiff said at the time the contract was entered into that the complete system included the items named in the specifications

attached to the proposition of March 17th. Certainly it can not be claimed-that the words "complete automatic sprinkling system" convey a distinct idea to one not familiar with the system. In other words, there is an ambiguity in these words. To no member of this bench does it convey a distinct idea of what would be necessary to make such complete automatic sprinkling system. But, on the part of the plaintiff, it is urged that when the entire clause is read in which the words occur, "complete automatic sprinkling system" it will be seen that an arbitrator was determined upon in the contract, who should decide that question. The entire paragraph reads: "We are to install a complete automatic sprinkling system such as will be satisfactory to the stock insurance companies, and when completed will meet strictly with their approval." And in the printed proposition already quoted, the agreement is that the work is to be "completed in accordance with the requirements of Ohio Inspection Bureau." The trial court evidently regarded this contention on the part of the plaintiff as sound, and in the argument of plaintiff and in briefs furnished by its counsel, abundant authority is cited to show that where parties determine upon one who is to decide whether the contract is completed, such decision is final. But is that fairly applicable to the case here? The plaintiff was to put in a "complete system" and it was to be a "Niagara System."

It would hardly be contended that if any system other than the Niagara System had been put in, it would have been a fulfillment on the part of the plaintiff of its obligations under the contract, although such system should be to the entire satisfaction of the "Ohio Inspection Bureau," and meet entire satisfaction of the "stock insurance companies." The insurance companies and the inspection bureau are interested only in having such a system as will properly secure the premises from danger by fire. It certainly is conceivable that a system of fire extinguishers might be installed which would meet with the entire approval of the inspection bureau and the insurance companies, which would not be a "complete automatic sprinking system" of the Niagara pattern.

Suppose A should contract to furnish B a complete McCormick harvester machine, to the satisfaction of the man in the

charge of B's farm, and A should furnish not a McCormick but a Deering Harvester machine, and such Deering machine was to the entire satisfaction of the man in charge of B's farm, it surely could not be claimed that A had performed his contract. The machine was not only to be to the satisfaction of the man in charge of B's farm, but it was to be a McCormick machine.

Suppose A undertakes to furnish B a complete harvesting machine to the complete satisfaction of the man in charge of B's farm, and B not himself being familiar with such machinery or its use, inquires of A what that includes, and he answers, either in writing or by word of mouth, that it includes an Appleby automatic binding attachment. A machine is furnished to the entire satisfaction of the man in charge of B's farm but it has no Appleby automatic binding attachment. It would seem as though there could be no doubt that A has not fulfilled his contract.

Suppose that A agrees to furnish B a certain span of horses and a carriage, with all the necessary attachments to the satisfaction of B's coachman. B inquires what is included in that complete carriage, and A answers, it includes among other things, a pole and shafts. A delivers the horses and the carriage with the pole and no shafts. It is entirely satisfactory to B's coachman. Has A fulfilled his contract? It would seem as though this question answered itself.

Suppose that at the time of the contract being entered into there had been present some of the appliances constituting a part of the apparatus, which appliances were made of brass, and which if made of iron would be equally satisfactory as they well might be, to the insurance companies and the inspection bureau, and the defendant had asked of what material are these particular appliances to be made when you put in a "complete automatic sprinkling system" of the Niagara pattern, and the answer had been, "They are always of brass." The system when put in, has several appliances of iron or some other material much cheaper than brass. They are equally satisfactory to the insurance companies and the inspection bureau, but could it be claimed that the plaintiff having said, either in writing or by word of mouth, that their completed system included these ap-

pliances made of brass, that the contract had been complied with? This seems to answer itself. In short, a fair construction of this contract would seem to require that the work and the materials should be satisfactory to the insurance companies and the inspection bureau, but that the fact that they were so satisfactory was not necessarily *all* that was required, but that such contract might include something else. We think the court clearly erred in excluding the evidence to which attention was called, which was offered by the defendant. We therefore hold that this evidence should have been admitted as explaining what the plaintiff represented to the defendant was meant by the Niagara sprinkling and fire extinguishing apparatus, and a "complete automatic sprinkling system," and for error in excluding this evidence, the judgment is reversed and the cause remanded.